IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

```
FILED
OCT - 1 2014
CLERK, US DISTRICT COURT
NORFOLK, VA
```

| | |
|---|---|
| EARL STEPHENSON, ) | |
| ) | |
| CURTIS DINKINS, ) | |
| ) | |
| STEVEN WILSON, ) | |
| ) | |
| and ) | |
| ) | |
| CHARLES FEAGIN, ) | |
| ) | |
| on behalf of themselves and all others ) similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 2:14cv 485 |
| ) | |
| DLP ENTERPRISES, INC., ) d/b/a PAIGE DECKING, ) | COMPLAINT (Jury Trial Demanded) |
| ) | |
| SCOTT PAIGE, ) | |
| ) | |
| and ) | |
| ) | |
| DENISE PAIGE, ) | |
| ) | |
| Defendants. ) | |

Serve:      DLP Enterprises, Inc.
c/o VB Business Services, L.L.C.,
Registered Agent
500 World Trade Center
101 W. Main St.
Norfolk, VA 23510

Scott Paige
820 Greenbrier Cir. #10
Chesapeake, VA 23320

**Denise Paige**
**820 Greenbrier Cir. #10**
**Chesapeake, VA 23320**

## COMPLAINT

NOW COME Plaintiffs Earl Stephenson, Curtis Dinkins, Steven Wilson, and Charles Feagin, on behalf of themselves and all other employees similarly situated, and for their Complaint against Defendants allege and say as follows:

1. This is a collective action by Plaintiffs on behalf of themselves and others similarly situated pursuant to 29 U.S.C. § 216(b) to recover compensatory and liquidated damages, attorney fees, and other relief from Defendants for violations of the Fair Labor Standards Act ("FLSA"). In addition, Plaintiffs assert individual claims for unpaid wages under State law.

## PARTIES

2. Plaintiff Earl Stephenson is a citizen and resident of Newport News, Virginia.

3. Plaintiff Curtis Dinkins is a citizen and resident of Norfolk, Virginia.

4. Plaintiff Steven Wilson is a citizen and resident of Virginia Beach, Virginia.

5. Plaintiff Charles Feagin is a citizen and resident of Hampton, Virginia.

6. Defendant DLP Enterprises, Inc., d/b/a Paige Decking ("DLP"), is a corporation organized under the laws of the Commonwealth of Virginia. Its registered office is located in Norfolk, Virginia, and its principal office is located in Chesapeake, Virginia.

7. Defendant Scott Paige is an owner, officer, and director of DLP and, upon information and belief, a citizen and resident of Chesapeake, Virginia.

8. Defendant Denise Paige is an owner, officer, and director of DLP and, upon information and belief, a citizen and resident of Chesapeake, Virginia.

## JURISDICTION AND VENUE

9. This is a collective action for unpaid overtime and minimum wages, straight-time wages in overtime weeks, and other relief under the FLSA.

10. In addition, Plaintiffs assert individual claims for unpaid wages in non-overtime weeks under State law.

11. This Court has subject matter jurisdiction of Plaintiffs' Federal law claims pursuant to 28 U.S.C. § 1331.

12. This Court has pendent and supplemental jurisdiction of Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

13. Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district. The unpaid wages sought in this action were earned in this district. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and Local Civil Rule 3.

## FACTUAL ALLEGATIONS

14. DLP is engaged in the business of ship maintenance and rehabilitation. DLP performs work as a subcontractor to businesses with contracts with the United States Government to perform maintenance and rehabilitation work on U.S. Navy and Military Sealift Command ships. DLP performs this work on such ships in private shipyards and on Government installations as well as on the ships while the ships are underway.

15. DLP is an enterprise engaged in commerce with annual gross receipts of more than $500,000. DLP is a covered employer under the Fair Labor Standards Act.

16. For the entire period of their employment by DLP, Plaintiffs were engaged in interstate commerce. The tools and materials Plaintiffs used to perform the work assigned them

by Defendants included tools and materials manufactured outside Virginia that had moved in interstate commerce.

17. At all times relevant herein, Defendants Scott and Denise Paige controlled the day-to-day operations of DLP, hired and fired employees, directed the employment practices of DLP, including the timekeeping and payroll practices, and set the wages, assignments, and schedules of the employees, including Plaintiffs and those similarly situated.

18. At all times relevant herein, Defendants Scott and Denise Paige exercised their own judgment and initiative in the directing the work, duties, wages, and other terms and conditions of employment of the employees, including Plaintiffs and those similarly situated.

19. At all times relevant herein, Defendants Scott and Denise Paige, as owners, officers, and directors of DLP were acting within the course and scope of their authority as agents of DLP.

20. Plaintiffs and those similarly situated are laborers employed by DLP to perform these services. In general, these services include staging materials and equipment, preparing spaces on ships for rehabilitation, removing materials such as tile or terrazzo from decks and bulkheads down to the bare metal, priming and preparing metal surfaces for repainting or redecking, and removing debris.

21. Plaintiffs Stephenson, Dinkins, and Feagin began their employment with Defendants through a temporary staffing company and were later hired directly by Defendants. Even when working for Defendants through the temporary staffing company, Defendants controlled the terms and conditions of Plaintiffs' employment, including work hours, work assignments, timekeeping practices, and supervision. At all relevant time, Defendants employed Plaintiffs as joint employers with the temporary staffing company.

22. Defendants employed Plaintiffs and those similarly situated primarily as pieceworkers. For spaces in which Plaintiffs and those similarly situated were required to remove existing materials and then prepare and prime the surface for repainting or redecking, the agreed piece rate was $1.50 per square foot until March 2013 and $2.50 per square foot thereafter. After March 2013, for spaces in which Plaintiffs and those similarly situated were required to only prepare and prime the surface for repainting or redecking, the agreed piece rate remained $1.50 per square foot.

23. In addition, for some types of work, such as moving or staging materials for those who would later apply new decking material to spaces, Defendants employed Plaintiffs and those similarly situated as hourly workers for a fixed hourly wage of $10 per hour.

24. Defendants, through the supervisors they hired, controlled, and directed, assigned Plaintiffs and those similarly situated to particular spaces and work.

25. DLP contracts to perform this work based on the square footage of the spaces. The square footage of the spaces is set forth in the contractual documents between DLP and its contractor and between the contractor and the Navy. One such document that establishes the square footage of each space contracted for rehabilitation is called the "scope sheet."

26. Defendants intentionally refused to use the actual square footage of the spaces, listed on the scope sheet and other contractual documents, in determining the compensation of Plaintiffs and those similarly situated. Instead, Defendants instructed their supervisors to "measure," i.e., undercount, the spaces themselves. As a result, Defendants systematically undercounted the square footage of the work performed by Plaintiffs and those similarly situated.

27. Yet Defendants billed their contracting partners for the work performed based on the square footage on the scope sheet and other contractual documents. Furthermore, Defendants

submitted adjustment reports to the Government for all additional square footage performed not listed in the contractual documents. Through this scheme, Defendants underpaid their employees and pocketed the difference.

28. For example, one supervisor told workers that he could not use a number too close to the number on the scope sheet for the workers' timesheet. On another occasion, a supervisor would not include the cove area, i.e., the portion of tile or terrazzo that extends up the wall, in the square footage, though the workers performed the work and DLP charged for the work. On sister ships, such as the USS Theodore Roosevelt and USS Abraham Lincoln, both Nimitz-class carriers, Defendants would credit workers with different square footage for the same space, e.g., a particular berthing area, on the two ships.

29. For piecework, Defendants paid Plaintiffs and those similarly situated only once the space assigned had been completed, even if the space took longer than a single workweek to complete. As a result, at times Plaintiffs and those similarly situated would receive no pay or less than minimum wages for hours worked in a workweek.

30. Defendants used a Monday through Sunday work week with weekly paydays on Fridays. For example, on the USNS Lenthal, a worker started a space on a Thursday and finished it the next Thursday, but since the space was not inspected by the Navy and the paperwork processed on time, he received no pay on Friday for any of the hours he had worked the prior Thursday through Sunday. In response to the worker's complaints to supervisors and both Paiges, Defendant Scott Paige told the worker, "You can't get paid until I get paid [by the Navy]."

31. For piecework and hourly work, Defendants knew that Plaintiffs and those similarly situated were entitled to overtime for all hours over 40 worked in a workweek. To

avoid and minimize their known obligation to pay overtime premiums, Defendants engaged in a pattern and practice of ignoring the actual hours worked by Plaintiffs and those similarly situated.

32. In a typical week, Plaintiffs and those similarly situated worked from 8 A.M. to 5 P.M. or later Monday through Friday. In many weeks, Plaintiffs and those similarly situated also worked on Saturday and/or Sunday in order to meet production schedules set by Defendants.

33. For example, on the USS Theodore Roosevelt between November 2013 and February 2014, workers routinely worked Saturday and Sunday to meet the production schedule Defendants promised the Navy. From February through July 2014, workers routinely worked Saturday or Sunday. Defendants knew workers were working these hours as the workers were required to text supervisors when they departed the ships each day.

34. Defendants ordered Plaintiffs and those similarly situated to falsify their timesheets to understate the number of hours worked. Defendants enforced this order through supervisors. Defendants and their supervisors ordered Plaintiffs and those similarly situated to change their timesheets if they recorded actual work times. Furthermore, Defendants and their supervisors changed recorded hours on timesheets submitted by Plaintiffs and those similarly situated to reduce the number of hours for which Defendants would pay.

35. For example, for work performed on the USS Dwight D. Eisenhower, one supervisor ordered workers not to put over 40 hours on their timesheets because such hours would not be paid. On another occasion, on the USS Theodore Roosevelt, a different supervisor told workers to put down 40 hours only since they would not get paid for hours anyway, only for square footage. On yet another occasion, on the USS Wasp, a supervisor cut a worker's timesheet hours from 5 to 2 for materials handling.

36. As part of the systematic scheme to falsify timesheets and refuse to pay for all hours worked, Defendants refused to compensate Plaintiffs and those similarly situated for all of their work time. This included:

   a. Time spent transporting materials and equipment from Defendants' warehouse in Chesapeake to ships where the work was to be conducted. For example, workers typically returned to the warehouse once per week to return damaged tools or tools needing maintenance and obtain a replacement.

   b. Time spent storing equipment and cleaning up spaces at the end of the work day. Because of the debris created by the work of stripping off deck materials, workers routinely required one and one-half hours to bag and haul all of the trash out of a space and to the dumpsters on the pier or hangar bays.

   c. Time spent waiting and available to work on the ship until the Navy permitted work to begin or resume because of shipboard operations. For example, workers were not paid for over three hours of work on the USS Dwight D. Eisenhower in August when the ship ordered them to stop work while Navy personnel investigated a danger tag.

   d. Upon information and belief, arbitrary deductions from hours worked for lunch breaks when lunch breaks were not taken.

37. Defendants and their supervisors knew the hours that Plaintiffs and those similarly situated were working because they were present on the ships, made the work assignments, "measured" the spaces for purposes of computing piece rates, calculated labor costs based on time and square footage, monitored the progress of the work aboard the ships, and observed employees report and return to the warehouse.

38. Defendants knew that the FLSA was applicable to its employees and did so for the three years preceding the filing of the Complaint. Defendants printed in their employee handbook that employees were entitled to overtime pay.

39. Plaintiffs and those similarly situated were subject to the same policies, procedures, and practices, including the same piece rate, hourly rate, timekeeping, and payroll policies, procedures, and practices.

40. Plaintiffs and those similarly situated were non-exempt employees, eligible for overtime compensation, under the FLSA.

41. Plaintiffs and those similarly situated routinely worked more than forty hours in a week but were not paid overtime.

42. Plaintiffs and those similarly situated routinely were not paid minimum wages in weeks in which a space was not completed.

43. Plaintiffs and those similarly situated were not paid the straight-time wages due in overtime weeks because Defendants intentionally undercounted the square footage of assigned spaces.

44. Plaintiffs were not paid the straight-time wages due in non-overtime weeks in violation of the contract of employment because Defendants intentionally undercounted the square footage of assigned spaces and intentionally undercounted the number of hours worked for work hours paid on an hourly basis.

45. Plaintiff Stephenson started working for Defendants in September 2011 and continues to do so. He typically worked more than seventy hours per week, 80% of which was piecework and 20% of which was hourly work handling materials, and Defendants failed to pay him overtime. He typically completed between 350 and 2500 square feet of space per week, and

Defendants usually shorted him 8-9% of the actual square footage he performed. As a result, he is owed overtime and unpaid square footage in virtually every workweek from September 2011 into August 2014. The actual computation of his unpaid wages cannot be calculated until Plaintiffs gain access to Defendants' records.

46. Plaintiff Dinkins worked for Defendants from September 2013 to September 2014. He typically worked sixty hours per week, 90% of which was piecework and 10% was hourly work handling materials, and Defendants failed to pay him overtime. He typically completed between 250 and 1000 square feet of space per week, and Defendants usually shorted him 8-9% of the actual square footage he performed. As a result, he is owed overtime and unpaid square footage in virtually every workweek from September 2013 into August 2014. The actual computation of his unpaid wages cannot be calculated until Plaintiffs gain access to Defendants' records.

47. Plaintiff Wilson worked for Defendants from November 2013 to September 2014. He typically worked sixty hours per week, 90% of which was piecework and 10% was hourly work handling materials, and Defendants failed to pay him overtime. He typically completed between 250 and 1000 square feet of space per week, and Defendants usually shorted him 8-9% of the actual square footage he performed. As a result, he is owed overtime and unpaid square footage in virtually every workweek since November 2013 into August 2014. The actual computation of his unpaid wages cannot be calculated until Plaintiffs gain access to Defendants' records.

48. Plaintiff Feagin started working for Defendants in October 2012 but has been "on-call" since August 2014. He typically worked sixty-four hours per week, 90% of which was piecework and 10% was hourly work handling materials, and Defendants failed to pay him

overtime. He typically completed between 300 and 1200 square feet of space per week, and Defendants usually shorted him 8-9% of the actual square footage he performed. As a result, he is owed overtime and unpaid square footage in virtually every workweek since October 2012 into August 2014. The actual computation of his unpaid wages cannot be calculated until Plaintiffs gain access to Defendants' records.

49. Defendants knew or showed reckless disregard as to whether they were violating the FLSA. Defendants paid other employees overtime and knew the FLSA applied to their workers.

50. All of the piecework employees of Defendants are similarly situated to Plaintiffs in the manner in which:

   a. They were suffered or permitted to work more than 40 hours in one or more workweeks in the relevant time period;

   b. Their compensable work time was or was not recorded;

   c. Their timesheets were manipulated to reduce the number of hours worked for which Defendants paid wages;

   d. Their piece rate work was improperly calculated by diminishing the square footage used to calculate the rate;

   e. Their regular rate was less than minimum wage in some weeks because of how Defendants credited piecework based on completion of spaces;

   f. They have not been paid all straight-time wages due in overtime weeks; and,

   g. They have not been paid minimum wages and the overtime premium due for all hours worked.

51. Plaintiffs are appropriate representatives for the purposes of the Court certifying a

collective action and approving a notice of the action to potential class members. Plaintiffs' FLSA claims are the same or similar to the claims of the other potential class members. In particular, Plaintiffs are appropriate representatives for a class of all employees employed as pieceworkers by Defendants since September 2011.

52. During the time period relevant to this action, Defendants employed approximately 15-20 pieceworkers at any particular time.

## COUNT ONE – UNPAID OVERTIME AND STRAIGHT TIME UNDER THE FLSA

53. The allegations in paragraphs 1 through 52 above are incorporated by reference as if fully set forth herein.

54. Plaintiffs and others similarly situated worked in excess of 40 hours in some workweeks and were not paid the overtime pay required by law.

55. In every such workweek, Plaintiffs and others similarly situated were not paid the straight-time wages for every hour worked required by the FLSA.

56. Defendants knew or showed reckless disregard for the matter of whether their failure to pay overtime pay and straight-time wages was prohibited by law.

57. Plaintiffs and others similarly situated have been damaged from Defendants failure to pay the overtime pay required by law.

## COUNT TWO – UNPAID MINIMUM WAGES IN VIOLATION OF THE FLSA

58. The allegations in paragraphs 1 through 57 above are incorporated by reference as if fully set forth herein.

59. Plaintiffs and others similarly situated were not paid minimum wages for all hours worked in all workweeks.

60. Defendants knew or showed reckless disregard for the matter of whether its

failure to pay minimum wages was prohibited by law.

61. Plaintiffs and others similarly situated have been damaged from Defendants failure to pay the minimum wages required by law.

## COUNT THREE – STATE LAW BREACH OF CONTRACT

62. The allegations in paragraphs 1 through 61 above are incorporated by reference as if fully set forth herein.

63. The Named Plaintiffs entered into a contract of employment with DLP.

64. Pursuant to that contract, DLP agreed to pay the Named Plaintiffs on a piece rate basis for the actual square footage of the work they performed.

65. Pursuant to that contract, DLP agreed to pay the Named Plaintiffs for the actual hours worked in tasks not paid on a piece rate basis.

66. DLP breached the contract by failing to pay the Named Plaintiffs for their work in accordance with the contract's terms.

67. The Named Plaintiffs fully performed their duties and obligations under the contract.

68. The Named Plaintiffs have been damaged by DLP's breach.

WHEREFORE, Plaintiffs respectfully pray the Court:

1. That the Court direct that notice of this action be provided to all others similarly situated to Plaintiffs on the FLSA claim;

2. That the Court certify a class of similarly situated employees for whom a collective action under the FLSA will proceed to trial;

3. That Plaintiffs and others similarly situated recover unpaid overtime wages, minimum wages, liquidated damages, attorney fees, and other relief by reason of Defendants'

violations of the FLSA;

4. That the Named Plaintiffs recover actual and consequential damages, and prejudgment interest on that amount, from DLP for breach of contract;

5. For a trial by jury on all issues so triable; and,

6. For such other and further relief as the Court may deem just and proper.

This the 30th day of September, 2014.

                                           **EARL STEPHENSON, CURTIS DINKINS, STEVEN WILSON, and CHARLES FEAGIN on behalf of themselves and all others similarly situated,**

_____
                                         Counsel

James R. Theuer (VSB #68712)
JAMES R. THEUER, PLLC
555 E. Main St., Suite 801
Norfolk, VA 23510
Tel: (757) 446-8047
Fax: (757) 446-8048
jim@theuerlaw.com

_____
                                         Counsel

Lisa Ann Bertini (VSB #29660)
Andrea Ruege (VSB #86493)
Bertini & Hammer, PC
999 Waterside Drive, Suite 1010
Norfolk, VA 23510
Telephone: (757) 670-3868
Facsimile: (757) 670-3865
lbertini@bhlegalteam.com
aruege@bhlegalteam.com

*Attorneys for Plaintiffs*
    *and all others similarly situated*